IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KASEY KYGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-22-929-D |
| | ) |
| STATE FARM FIRE AND CASUALTY | ) (District Court of Oklahoma County, |
| COMPANY, *et al.*, | ) Oklahoma, Case No. CJ-2022-3990) |
| | ) |
| Defendants. | ) |

## ORDER REMANDING CASE

Before the Court is Plaintiff's Motion to Remand [Doc. No. 12], contesting the jurisdictional basis for removal of this case to federal court by Defendant State Farm Fire and Casualty Company ("State Farm"). Defendant timely responded [Doc. No. 14], and Plaintiff replied [Doc. No. 15]. The matter is fully briefed and at issue.

Plaintiff's motion is governed by 28 U.S.C. § 1447(c), which mandates the remand of a removed case whenever "it appears that the district court lacks subject matter jurisdiction." Plaintiff challenges allegations of fraudulent joinder made in the Notice of Removal to establish the existence of diversity jurisdiction even though she has sued a nondiverse defendant, State Farm agent Chuck Davis. For the following reasons, the Court finds State Farm has not carried its burden to show that Plaintiff has no possible claim against the insurance agent, Davis, based on the factual allegations of her pleading.

### *Background*

Plaintiff brought suit in state court to recover damages from State Farm for breach of contract and breach of an insurer's duty of good faith and fair dealing after State Farm

denied a loss claim under her homeowner's insurance policy for hail damage to the roof of her house. Plaintiff also sued State Farm's agent, Davis, for negligent procurement and constructive fraud in allegedly obtaining a policy that did not provide the replacement cost coverage she requested and making material misrepresentations. *See* Pet. [Doc. No. 1-2], ¶¶ 39-63. Davis is domiciled in the State of Oklahoma and thus, has the same citizenship as Plaintiff.

State Farm removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332 by alleging that Plaintiff fraudulently joined the insurance agent to defeat removal so the agent's citizenship should be disregarded. *See* Notice of Removal [Doc. No. 1], ¶¶ 4, 6. State Farm asserted that Plaintiff's state-court Petition fails to state a viable claim against Davis under either a negligent procurement or constructive fraud theory. *Id.*, ¶ 7. According to State Farm, Plaintiff's factual allegations show that Davis procured a replacement cost policy as requested and that the alleged misconduct did not cause Plaintiff's alleged damages, which are based on State Farm's denial of her claim and not inadequate coverage. *Id.*, ¶¶ 8-12.

In her Motion, Plaintiff disputes State Farm's characterization of her claims and framing of the issues, and asserts that she has viable claims against Davis. Plaintiff argues that she requested from Davis "full replacement cost coverage for her roof" which was not procured as promised, and that Davis represented that "there was nothing about the condition of the roof that would preclude full replacement of [it] in the event of any weather-related event—no matter the extent of damage." *See* Pl.'s Mot. at 19. This representation, Plaintiff argues, was inconsistent with State Farm's denial of her claim

because the hail damage "[did] not penetrate the shingle mat." *Id.* Based on allegations in her pleading regarding Davis's role in procuring the policy and a list of alleged misrepresentations, Plaintiff contends she has stated claims of negligent procurement and negligent misrepresentation against Davis.

### *Standard of Decision*

Subject matter jurisdiction over this case turns on the doctrine of fraudulent joinder. "To establish fraudulent joinder, the removing party must demonstrate either: 1) actual fraud in the pleading of jurisdictional facts, or 2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (internal quotation omitted); *Long v. Halliday*, 768 F. App'x 811, 814 (10th Cir. 2019) (unpublished).[1] State Farm relies solely on the second basis. As the removing party, State Farm must establish federal jurisdiction exists. *See McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008).

"The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988 (internal quotation omitted); *Long*, 768 F. App'x at 814. In this case, State Farm must show "there is no possibility that [Plaintiff] would be able to establish a cause of action against [the insurance agent] in state court." *See Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, *1 (10th Cir. April 14, 2000) (unpublished); *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (unpublished) ("the removing party must

---

[1] Unpublished opinions are cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

3

show that the plaintiff has no cause of action against the fraudulently joined defendant"). Stated differently, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." *Nerad v. AstraZeneca Pharm., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (unpublished). The nonliability of a defendant alleged to be fraudulently joined must be "established with complete certainty." *See Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967); *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6)." *Montano*, 2000 WL 525592 at *2.[2]

## *Discussion*

State Farm contends the formulaic allegations of the Petition fail to state a viable claim against Davis. State Farm points to similar allegations in other cases filed by Plaintiff's attorneys and argues that, in this case, the claims asserted are inconsistent with the factual basis of Plaintiff's action and her alleged damages. Upon consideration, the Court finds that State Farm's arguments ignore the totality of Plaintiff's pleading and improperly prejudge the credibility of Plaintiff's allegations.

---

[2] In assessing fraudulent joinder, "the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Dodd*, 329 F.2d at 85 (citations omitted); *see Smoot*, 378 F.2d at 881-82 ("it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal"); *accord Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (unpublished). In this case, however, State Farm relies solely on Plaintiff's pleading, the insurance policy, and similar petitions filed by Plaintiff's attorneys in other cases.

4

I.  **Plaintiff's Factual Allegations and Claims Against Davis**

Accepting the allegations of Plaintiff's pleading, she purchased a "homeowners' replacement cost policy of insurance" from State Farm through Davis's office. Pet., ¶ 5. She "specifically requested a policy that would fully replace her roof in the event of a loss." *Id.*, ¶ 7. Davis was "the first in line of underwriting for State Farm" and was required to inspect the property in order to verify its condition, accurately measure its dimensions, and gather information about its amenities and construction. *Id.*, ¶¶ 8, 40. For the house "to qualify for the full replacement cost coverage on the roof (as opposed to actual cash value) that Plaintiff had requested, [Davis] was required to verify the condition of the roof to ensure its condition satisfied State Farm's underwriting guidelines." *Id.* Plaintiff specifically alleges that "the age, condition and predominate roof surface materials [are] all factors that not only affect[] the eligibility to obtain replacement cost coverage on a roof, but also dictate[] the calculation of the increased premium associated with the purchase of this coverage." *Id.*, ¶ 9.

Ultimately, Davis "specifically advised and represented to Plaintiff that her roof was in good condition, qualified, and was eligible for full replacement cost coverage" as it met "all of State Farm's guidelines and underwriting requirements." *Id.*, ¶¶ 10, 42. "Neither Davis nor State Farm advised Plaintiff at any time that her roof was too old, worn, in poor condition, [or] plagued by pre-existing damage or defective workmanship" so as to render the roof ineligible for replacement cost coverage. *Id.*, ¶¶ 10, 41. Using State Farm's valuation software, Davis calculated and determined for Plaintiff's house a policy limit to cover "100 percent of its replacement cost value." *Id.*, ¶ 12, 43. Davis then procured "and

5

State Farm issued a homeowner's full replacement cost insurance policy" that provided coverage for Plaintiff's property, including "her residence, household contents, and other structures," and in an amount represented to be "sufficient to repair and/or replace the Plaintiff's Insured Property back to its pre-loss condition in the event of a loss." *Id.*, ¶¶ 4, 11-12.

On August 30, 2020, Plaintiff's home sustained hail damage. After conducting an inspection of her roof, an independent roofing company advised Plaintiff that "her roof had been significantly damaged by hail and that the entirety of her roof would need to be replaced." *Id.*, ¶ 14. Thereafter, Plaintiff notified State Farm of the damage to her roof. Plaintiff recounts State Farm's adjustment of her claim as follows:

> On January 7, 2021, State Farm (through its adjusters) inspected the loss and confirmed Plaintiff's home had sustained wind/hail damage and assigned a backdated date of loss of August 30, 2020. Specifically, State Farm found damage to the vent caps, turtle vents and pipe flashing, gutters/downspouts and four-shingles but inexplicably did not find hail damage to the entirety of the roof. As a result, Plaintiff was verbally advised that nothing would be paid on her claim as all the sustained damage identified by State Farm would not exceed Plaintiff's applicable deductible. . . . State Farm reached this conclusion by (a) attributing much of the damage to preexisting issues, and (b) implementing a state-wide practice of ignoring hail damage that does not penetrate the shingle mat: that is according to State Farm claims handling practices, hail impacts and bruises don't constitute damage unless they penetrate the back side of the mat—which by design effectively limits payment under the policy to only the rarest and most severe hail storms, and by utilizing "estimating software" it knew was inaccurate to calculate a damage estimate so as to knowingly escape any payment on Plaintiff's claim.

*Id.*, ¶¶ 15, 17.

Disagreeing with this assessment, Plaintiff "provided State Farm with a copy of the damage estimate obtained from an independent roofer who—contrary to State Farm—

6

found the roof had sustained significant hail damage and was totaled, estimating $19,589.00 to replace the roof." *Id.*, ¶ 16.

Plaintiff further alleges that State Farm engaged in a statewide scheme in Oklahoma of "systematically denying and/or underpaying valid roof claims" and the handling of her claim was consistent with this scheme. *Id.*, ¶¶ 18, 21. Specifically, State Farm denied Plaintiff's roof claim on the grounds that the claimed damage was the result of "a pre-existing, non-covered cause of loss under Plaintiff's Policy, despite the fact it failed to perform a pre-inception and/or periodic renewal inspection (or any other required inspection) demonstrating the claimed damage was, in fact, pre-existing." *Id.*, ¶ 21. Thus, Plaintiff alleges in her pleading two reasons why State Farm denied her claim for hail damage to the roof of her home: 1) the damage to the shingles was not a covered loss (without penetration of the shingle mat); and 2) there was a noncovered cause of loss (preexisting damage).

Plaintiff claims in Count III of her pleading for "Negligent Procurement of Insurance" that Davis acted negligently during her purchase of the replacement cost policy in the performance of underwriting-related duties, such as inspection of the roof, screening for poor condition or preexisting damage, and advising Plaintiff whether her house qualified for coverage. Davis allegedly breached duties "to accurately inform Plaintiff of all coverages and advise [her] of the benefits, risks, limitations and exclusions in the coverage procured" and "to perform a reasonable inspection of the Insured Property prior to procuring the replacement cost coverage of said Policy to ensure no changes to the policy were necessary or required." *Id.*, ¶ 47. Davis allegedly breached these alleged duties "by

failing to adhere to State Farm's underwriting guidelines and failing to accurately and truthfully answer Plaintiff's questions regarding the Policy coverages, and by promising Plaintiff the Policy selected and calculated by him for Plaintiff was correct and would fully repair and/or replace the Insured Property (including the roof), back to its pre-loss condition in the event of a loss." *Id.*, ¶ 50.

Similarly, Plaintiff claims in Count IV for "Constructive Fraud and Negligent Misrepresentation" that, among other things, "Davis represented to Plaintiff that her Insured Property met all of State Farm's underwriting guidelines and that there were no preexisting issues with the Insured Property (including the roof) that would either prevent issuance of the replacement cost policy or exclude coverage for any damages sustained to her Insured Property." *Id.*, ¶¶ 55. Plaintiff alleges that "Davis misrepresented the nature and character of the Policy procured" and "the replacement cost as one which would fully restore, replace and/or repair Plaintiff's Insured Property (including her roof) . . . to its pre-loss condition in the event of a loss by a covered event." *Id.*, ¶ 57. Davis's misrepresentations allegedly misled Plaintiff and "induced [her] to accept and purchase the State Farm replacement cost policy (with a full coverage endorsement for the roof)" and caused her to sustain "damages, including deprivation of monies rightfully belonging to [her]." *Id.*, ¶¶ 59-60, 62.

## II.     State Farm's Showing of Fraudulent Joinder

State Farm seeks to defeat Plaintiff's negligent procurement claim based on the principle that, although an insurance agent has a duty to use reasonable care in the procurement of insurance, liability results "[o]nly if 'by the agent's fault, insurance is not

procured as promised and the insured suffers a loss.'" *See* Resp. Br. at 10 (quoting *Swicky v. Silvey Cos.*, 979 P.2d 266, 268 (Okla. Civ. App. 1999) (emphasis omitted). State Farm argues that Plaintiff cannot establish the causation element of a negligence claim against Davis because, according to her pleading, Davis procured the replacement cost policy that Plaintiff requested, so "Plaintiff cannot possibly state a claim against Davis for negligent procurement." *Id.* at 12-13. State Farm contends replacement cost coverage was not implicated because there was no covered loss; "State Farm found no hail damage to the shingles, and thus the cost to repair or replace them never arose." *Id.* at 13.

Similarly, as to constructive fraud, State Farm argues that "the element of causation is absent" because "Plaintiff suffered no damage from the alleged misrepresentation because none of them are the reason for the denial of the roof claim." *Id.* at 23. State Farm relies on the alleged fact that it refused "to pay to replace Plaintiff's shingles because it found they were not damaged by wind or hail" to argue that its claim decision "had nothing to do with inspections being completed, whether the roof met all 'underwriting guidelines,' [or[ whether Plaintiff had replacement cost coverage." *Id.*

But these arguments overlook Plaintiff's additional allegations regarding State Farm's alleged denial of her roof claim. Plaintiff plainly alleges that one reason why State Farm rejected her claim was that any loss was caused by preexisting damage and therefore not covered. *See* Pet., ¶ 21 (State Farm denied Plaintiff's roof claim after "arbitrarily classifying clear evidence of hail bruising, hail fracture and granular loss as a pre-existing, non-covered cause of loss under Plaintiff's Policy."). This allegation arguably implicates Davis's inspection of the roof, State Farm's underwriting guidelines, and coverage. State

9

Farm acknowledges an allegation in Plaintiff's pleading that the replacement cost coverage of her policy was "illusory" but faults her for failing to explain "how any conduct by Davis made it illusory." Resp. Br. at 12 (quoting Pet., ¶ 48(b)). In the Court's view, however, State Farm's arguments ignore or attempt to discount the allegations of Plaintiff's pleading. Accordingly, the Court cannot say that Plaintiff has no possibility of recovery against Davis. Therefore, State Farm's claim of fraudulent joinder fails.

### *Conclusion*

For these reasons, the Court finds that Defendant Chuck Davis cannot be disregarded as a party and thus, complete diversity of citizenship does not exist. Therefore, this Court lacks subject matter jurisdiction and must remand the case to state court under 28 U.S.C. § 1447(c).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand [Doc. No. 12] is **GRANTED.** The case is **REMANDED** to the District Court of Oklahoma County, Oklahoma.

**IT IS FURTHER ORDERED** that State Farm's Motion for Jurisdictional Discovery [Doc. No. 20] and Motion for Leave to File a Sur-Reply in Opposition to Plaintiff's Motion to Remand [Doc. No. 21] are **DENIED.**

**IT IS SO ORDERED** this 29th day of December, 2022.

TIMOTHY D. DeGIUSTI
Chief United States District Judge